IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


KELLY JAY LAWRENCE,

      Plaintiff,

v.                                     Case No. 5:14-CV-3123-JTM

JAMES HEIMGARTNER, et al.,

      Defendants.


**MEMORANDUM AND ORDER**

Petitioner Kelly Jay Lawrence brings this application for Writ of Habeas Corpus by a person in state custody pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the application is denied.

## I.      Factual and Procedural Background

The following is an account of the facts of this case as determined by the Kansas Supreme Court.[1]

> On December 1, 2001, Willie Adams, Michael Smith, Benjamin Riley, and Dontue Trevillion went to Holt's Barbershop in Wyandotte County, Kansas. Ben stayed to get his hair cut while the three others left to get something to eat. As Willie was backing his car out of its parking space, he came close to another car and, according to some witnesses, the loud music in Willie's car set off the other car's alarm. Ravaughn Lawrence and his wife, Mia, claimed that Willie hit and scratched Ravaughn's car. Willie and Ravaughn argued; Ravaughn pushed Willie, and Willie pointed his index finger at Ravaughn's forehead and threatened

---

[1] State court factual findings are presumptively correct and may be rebutted only by "clear and convincing evidence." *Saiz v. Ortiz*, 392 F.3d 1166, 1175 (10th Cir. 2004) (citing 28 U.S.C. § 2254(e)(1)).

to beat him up.  James Holt came out of the barbershop and broke up the dispute. Michael and Dontue convinced Willie to get back in the car and leave.

Ben saw the altercation through the barbershop window. When Ravaughn came back inside the barbershop, Ben observed him using the telephone and heard him say, "Call Kelly." Ravaughn admitted making a call but denied saying, "Call Kelly."

After getting something to eat, Willie, Michael, and Dontue returned to Holt's barbershop and went inside. Willie and Ravaughn began arguing again and Holt told them to take it outside. When Willie, Michael, and Dontue went outside, Damon Mondaine, whom Willie had called on his cell phone when the first altercation occurred, was there. A few minutes later, a black car pulled up and the defendant, Kelly Lawrence, got out. The defendant is Ravaughn's younger brother. By that time, Willie and Ravaughn were arguing again in a loud and angry manner. Michael tried to convince Willie to leave and Damon tried to calm Willie down. All indicated they were ready to leave and headed to Willie's car when, according to some witnesses, the defendant said, "There ain't nobody going nowhere," and pulled out a gun and started shooting.

As Michael turned to run, he was shot in the stomach; Michael survived. Willie was killed by a gunshot wound that entered his back, damaged his heart and lungs, and exited the front of his body. One bullet came through the barbershop window but did not injure anyone.

Michael, Dontue, and Damon all testified that they did not see anyone in possession of a gun that day other than the defendant. Nor did any of them hear Willie threaten to shoot anyone.

The defendant and his witnesses presented a different view of the events. The defendant admitted shooting the victims but claimed he was acting in defense of himself and others. The defendant testified that, on the day of the shooting, he was riding with his brother Ravaughn's wife, Mia, when they went to the barbershop to take Ravaughn his car keys. Damon Mondaine, whom the defendant knew, called the defendant out of the car. Damon did not know it was the defendant's brother inside the barbershop, and he told the defendant, "[W]hen this dude come out, we gonna fuck this nigger up." The defendant told Damon that "the dude with that car who he pointed at was my brother." Willie was also outside. When the defendant asked Willie to let it go, Willie responded, "[F]uck that nigga."

When Ravaughn came out of the barbershop, he and Willie began arguing. According to the defendant, Willie said, "I'll kill you, nigga," and, "I have something for all of ya'll." The defendant saw Willie go to his car, reach down, and come up with a pistol. At that point, the defendant "turned around, ran and shot." After shooting at Willie, the defendant saw Michael running towards him

with a handgun. Michael fired a few shots at the defendant, and the defendant fired back once.

The defendant testified that Willie had a reputation for fighting and for carrying a firearm. The defendant was scared and believed that he, his brother, and his brother's wife were all at risk. The defendant explained he carried a gun because he had been shot and nearly died 5 months earlier and, although the man who shot the defendant was in jail, other people had been trying to convince the defendant not to testify. The defendant testified that he was not called to the barbershop or told to bring a firearm.

Ravaughn and Mia also testified on behalf of the defendant and generally corroborated his version of events. Ravaughn, Mia, and a third defense witness, David Hill, all testified that Willie had threatened to "pop" or shoot Ravaughn during the altercation about the scratched car.

After the shooting, police officers processed Willie's car, the barbershop, and the scene. They recovered no guns or ammunition. They did find four 9 mm caliber shell casings which had been fired from the same gun. Willie Adams' fatal gunshot wound was consistent with his having been shot by a 9 mm. A bullet hole found in Ravaughn's car and a bullet fragment recovered at the scene were consistent with a 9 mm caliber but could also have been from a higher caliber weapon.

*State v. Lawrence*, 281 Kan. 1081, 1082-84, 135 P.3d 1211, 1213-14 (Kan. 2006) (hereinafter "*Lawrence I*"). Petitioner was convicted by a jury of first-degree premeditated murder, aggravated battery, two counts of aggravated assault, and possession of a firearm. *Id*. at 1214. On August 29, 2003, the trial court sentenced petitioner to a hard 50 life sentence for the murder conviction with all other sentences running concurrently. *Id*.

The state district court granted petitioner's request to file a notice of appeal out of time. Petitioner subsequently appealed to the Kansas Supreme Court. On June 9, 2006, his convictions and sentence were affirmed. *Lawrence I*, 135 P.3d at 1221. Petitioner thereafter filed a motion for post-conviction relief pursuant to K.S.A. § 60-1507 (habeas corpus) in the District Court of Wyandotte County. This motion was denied on August 5, 2010. Petitioner appealed, and, on August 30, 2013, the Kansas Court of Appeals affirmed the denial of petitioner's § 60-1507

motion. *Lawrence v. State*, 308 P.3d 30 (Kan. Ct. App. Aug. 30, 2013) (hereinafter "*Lawrence II*"). On June 17, 2014, the Kansas Supreme Court denied review.

On July 10, 2014, petitioner filed an application for federal habeas corpus relief pursuant to U.S.C. § 2254 in the United States District Court for the District of Kansas. In his petition, petitioner alleges two assignments of error: (1) ineffective assistance of trial counsel, and (2) unconstitutional sentence. Dkt. 1.

## II.     Legal Standard

The court's review of petitioner's habeas motion is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). AEDPA imposes a "highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citation and internal quotation marks omitted). Accordingly, the court may not grant relief unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented at trial." 28 U.S.C. § 2254(d).

A state court decision is "contrary to clearly established Federal law" when: (a) the state court "'applies a rule that contradicts the governing law set forth in [Supreme Court] cases;'" or (b) "'the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Maynard v. Boone*, 468 F.3d 665, 669 (10th Cir. 2006) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)).

"In reviewing state criminal convictions in federal habeas corpus proceedings, a federal court does not sit as a super-state appellate court." *Evans v. Kansas*, 2014 U.S. Dist. LEXIS 27062, at *3 (D. Kan. Feb. 4, 2014) (citing *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Id*. at *3-4 (quoting *Schriro v. Landrigan*, 500 U.S. 465, 473 (2007)). "In order to obtain relief, a petitioner must show that the state court decision is 'objectively unreasonable.'" *Id*. at *4 (quoting *Williams*, 529 U.S. at 409) (O'Connor, J., concurring). "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Id*. (quoting *Maynard*, 468 F.3d at 671).

### III.    Analysis

Petitioner alleges two assignments of error in his petition.  First, he argues that he was denied his Sixth Amendment right to effective assistance of trial counsel when his trial counsel failed to present expert evidence relating to petitioner's mental state, namely his alleged post-traumatic stress disorder ("PTSD").  More specifically, petitioner alleges that his trial counsel failed to present expert evidence in order to support a defense of mental disease or defect, or, in other words, imperfect self-defense.  Second, petitioner alleges that his sentence, the "Hard 50," is unconstitutional based on the Supreme Court's ruling in *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000).

### A.    Ineffective Assistance of Counsel

In general, to succeed on a claim of ineffective assistance of counsel, a petitioner must meet the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1994).  Under

*Strickland*, a petitioner claiming ineffective assistance of counsel must prove that: (1) his counsel's representation was constitutionally deficient because it fell below an objective standard of reasonableness, and (2) the deficiency prejudiced the petitioner because it deprived him of the right to a fair trial. *Id*. at 687-88.   To prevail on the first prong, a petitioner must demonstrate that the omissions of his counsel fell "outside the wide range of professionally competent assistance." *Id*. at 690.     This standard is "highly demanding." *Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986).   Strategic or tactical decisions on the part of counsel are presumed correct, unless they were "completely unreasonable, not merely wrong, so that [they] bear no relationship to a possible defense strategy." *Fox v. Ward*, 200 F.3d 1286, 1296 (10th Cir. 2000) (internal citations omitted).

With regard to the second prong, a petitioner "must show there is a reasonable probability that, but for his counsel's professional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*.  This requires the court to focus on "the question [of] whether counsel's deficient performance render[ed] the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).

### 1.       State Court Holding

As noted above, petitioner now claims, and indeed argued before the state courts, that his trial counsel was ineffective for failing to present expert evidence relating to his mental state, specifically his alleged PTSD, in order to support a defense of mental disease or defect, or imperfect self-defense.  In reviewing this claim, the Kansas Court of Appeals found as follows:

> Early in the trial, [petitioner's trial counsel Elle] Sullivant indicated an intent to introduce evidence that Lawrence had been the victim of a shooting 5 months prior to the altercation with Adams and Smith.  The State sought a motion in

limine to prohibit the defense from discussing the prior shooting at trial, but the district court overruled the motion.   Based on the prior shooting, Sullivant attempted to demonstrate the reasonableness of Lawrence's action in bringing a gun to the confrontation on December 1, 2001, and in using the gun to defend himself from imminent deadly force.   Sullivant elicited testimony from Lawrence, which, if believed, would have established that Lawrence acted in complete self-defense in shooting Adams and Smith.

At sentencing, Sullivant called Dr. Marilyn Hutchinson, a forensic psychologist, to establish Lawrence's posttraumatic stress disorder (PTSD) as sentencing mitigation.   Along with other opinions, Hutchinson testified that Lawrence's PTSD would have impaired his judgment regarding the danger posed by Adams' and Smith's conduct.   While the district court accepted Hutchinson's diagnosis, the court concluded that the mitigating factors did not warrant a sentence reduction.

\*\*\*

While Lawrence's motion raised several allegations of Sullivant's deficient representation, his appeal focuses on Sullivant's development of the self-defense strategy.   Lawrence contends that the manner in which Sullivant investigated and presented his defense was objectively unreasonable and that this deficient representation prejudiced his ability to obtain a fair trial.   Lawrence argues that Sullivant's decision to call Hutchinson as an expert witness at the sentencing hearing proves the point that Sullivant should have called an expert witness at trial.   The State contends that the district court's factual findings were supported by substantial competent evidence and were sufficient to support its conclusions of law in denying the K.S.A. 60-1507 motion.

\*\*\*

While expert testimony regarding the psychological manifestation of Lawrence's PTSD might have provided a viable defense to the charge of first-degree premeditated murder, it would have supported only an imperfect self-defense theory . . . .

But, as Sullivant testified, her trial strategy was to attempt to achieve an *outright acquittal* for Lawrence based on self-defense.   Choosing to pursue a complete self-defense theory renders Sullivant's failure to seek psychological testing of Lawrence until after trial objectively reasonable.   Because Lawrence's defense involved establishing that his conduct was justified, there was no reason for Sullivant to present expert testimony at trial to explain Lawrence's psychological condition.   In fact, such testimony, when subject to cross-examination, might actually have impaired the theory of complete self-defense.

*Lawrence II*, 308 P.3d at *2-10 (emphasis added).

## 2. Habeas Review

This court's review of counsel's performance is "highly deferential." *Hooks v. Workman*, 606 F.3d 715, 723 (10th Cir. 2010). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Byrd v. Workman*, 645 F.3d 1159, 1168 (10th Cir. 2011) (internal quotation omitted). "To be deficient, the performance must be outside the wide range of professionally competent assistance. In other words, it must have been completely unreasonable, not merely wrong." *Hooks*, 606 F.3d at 723 (citations omitted) (internal quotation marks omitted); *accord Gardner v. Galetka*, 568 F.3d 862, 874 (10th Cir. 2009), cert. denied, 559 U.S. 993 (2010). The reasonableness of the challenged conduct must be evaluated from counsel's perspective at the time of the alleged error. *See Edens v. Hannigan*, 87 F.3d 1109 (10th Cir. 1996). "The Supreme Court requires [the court] to make 'every effort . . . to eliminate the distorting effects of hindsight' by indulging in a strong presumption counsel acted reasonably." *Strickland*, 466 U.S. at 689. Petitioner bears the heavy burden of overcoming the presumption that counsel's actions were sound trial strategy. *Byrd*, 645 F.3d at 1168.

Moreover, because this is a § 2254 proceeding, petitioner faces an even *greater* challenge, "as this court defers not only to the attorney's decision in how to best represent a client, but also to the state court's determination that counsel's performance was not deficient." *Evans*, 2014 U.S. Dist. LEXIS 27062, at *25 (citing *Byrd*, 645 F.3d at 1168). This court's review of a petitioner's habeas claim of ineffective assistance of counsel is therefore "doubly deferential." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). "[T]he question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument

that counsel satisfied *Strickland's* deferential standard." *Harrington v. Richter*, 562 U.S. 86, 105 (2011).

The Kansas Court of Appeals evaluated the evidence of record and applied law consistent with the Supreme Court's *Strickland* standard for ineffective counsel. Here, there is evidence, in the form of trial counsel's testimony, that she did not believe petitioner's mental condition could meet the high standard to show that mental disease or defect negated petitioner's specific intent. More specifically, counsel testified:

> If you're asking me did I think that [petitioner's mental health] was such of a level of not guilty by reason of insanity or something to that effect, I would say— I consider that probably one of the most heightened standards in the area of law. I would also say that I don't know if I've ever met anyone who would meet that standard. I did not think during that time period that [petitioner] was insane or anything to that effect.

*Lawrence II*, 308 P.3d at *9.

"Strategic or tactical decisions on the part of counsel are presumed correct unless they were completely unreasonable, not merely wrong, so that [they] bear *no* relationship to a possible defense strategy." *Moore v. Marr*, 254 F.3d 1235, 1239 (10th Cir. 2001) (emphasis added). Counsel is not ineffective because she chose to pursue acquittal based on self-defense rather than a conviction for a lesser crime based on a theory of imperfect self-defense. As the Court of Appeals established, this strategy was based on the facts of the case, namely the fact that the alleged victims, Adams and Smith, were the aggressors in the confrontation between petitioner and Ravaughn. Indeed, at trial, petitioner and several other defense witnesses testified that Adams had threatened Ravaughn and retrieved a gun from his vehicle. Petitioner testified that he shot his gun, first at Adams and then at Smith, as Smith charged toward petitioner holding a handgun. *Lawrence II*, 308 P.3d at *8. Based on petitioner's own belief and testimony that it

was the *victims* who were the aggressors and that he was merely defending himself and his family with like force, it is reasonable that trial counsel adopted a trial strategy of total, not imperfect, self-defense.

The state court relied on *Strickland* in reaching its conclusion and its resolution of petitioner's claim was a reasonable application of *Strickland*.  Accordingly, no basis for habeas relief has been shown.

**B.**     **Hard 50 Sentencing Scheme**

Petitioner next contends that the Hard 50 sentencing scheme is unconstitutional.  More specifically, petitioner alleges unconstitutionality because the jury does not determine facts that increase the penalty beyond a reasonable doubt.  Dkt. 1, at 9.

At the time of petitioner's conviction and sentencing in 2003, a judge could impose a hard 50 sentence (mandatory minimum sentence of 50 years) for a first-degree murder conviction if the judge found by a preponderance of the evidence that certain aggravating factors were present.  *State v. Robertson*, 279 Kan. 291, 307, 109 P.3d 1174 (2005).  The district court imposed a hard 50 sentence for petitioner after finding one aggravating factor: that petitioner "knowingly or purposely caused a great risk of death to more than one person."  *Lawrence  I*, 135 P.3d at 1220.

**1.**     **State Court Holding**

The Kansas Supreme Court rejected petitioner's argument, finding that it had previously resolved the issue, that its prior cases had considered the federal cases cited by petitioner, and that it had properly upheld the hard 50 sentencing scheme.  *Id*.

2.      **Habeas Review**

In June 2013, the United States Supreme Court held that facts that increase the statutory

minimum sentence (no less than facts that increase the statutory maximum sentence) are

elements of the offense that must be found by a *jury* and proved beyond a reasonable doubt.

*Alleyne v. United States*, __ U.S. __, 133 S. Ct. 2151, 2156 (2013).   Therefore, it offends the

Sixth Amendment for a judge, rather than a jury, to find facts that increase the statutory

minimum sentence.   *Id*.   After the Court's holding in *Alleyne*, *juries* "must find any facts that

increase either the statutory maximum or minimum because the Sixth Amendment applies where

a finder of fact both alters the legally prescribed range and does so in a way that aggravates the

penalty." *Id*. at 2161 n.2.

In 2013, and in response to *Alleyne*, the Kansas Legislature revised the state's hard 50

sentencing law.   For crimes committed after that date, the statute requires the *jury* "to find

beyond a reasonable doubt one or more of the aggravating circumstances enumerated in the

statute before imposing a hard 50 sentence." *Engelhardt v. Heimgartner*, 2014 U.S. Dist. LEXIS

11954, at *24 (D. Kan. Jan. 31, 2014) (citing K.S.A. § 21-6620).   However, the statute expressly

provides that the new law shall *not* apply to any case in which the defendant's conviction and

sentence were final prior to June 1, 2013.   *See* K.S.A. § 21-6620(d).   Petitioner's conviction and

sentence were final long before that date, in 2003.   As such, this statute is inapplicable to

petitioner.

Neither *Alleyne* nor the state statute provides relief for petitioner.   "A prisoner seeking

federal habeas relief may rely on new constitutional rules of criminal procedure announced

before the prisoner's conviction became final." *Engelhardt*, 2014 U.S. Dist. LEXIS 11954, at

*25 (citing *Teague v. Lane*, 489 U.S. 288, 310 (1989) (plurality opinion)).   "Finality occurs when

-11-

direct state appeals have been exhausted and a petition for writ of certiorari from the United States Supreme Court has become time barred or has been disposed of." *Id.* (citing *Griffith v. Ky.*, 479 U.S. 314, 321 n.6 (1987)).

The Supreme Court has not made *Alleyne's* rule retroactive to cases on collateral review, and the Tenth Circuit has determined that *Alleyne* does not apply retroactively to cases on collateral review. *See In re Payne*, 733 F.3d 1027, 1029 (10th Cir. 2013). "*Alleyne* is an extension of [*Apprendi*], and rules based on *Apprendi* do not apply retroactively on collateral review." *Engelhardt*, 2014 U.S. Dist. LEXIS 11954, at *25-26 (citing *Schriro*, 542 U.S. at 348).

Therefore, the decision of the Kansas Supreme Court was a reasonable determination of the law at the time petitioner's conviction and sentence became final. Accordingly, no basis for habeas relief has been shown.

## IV.     Certificate of Appealability

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Pursuant to 28 U.S.C. § 2253, the court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing." A petitioner can satisfy the standard by demonstrating that "the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings." *Kelley v. Pryor*, 2014 U.S. Dist. LEXIS 168229, at *16 (D. Kan. Dec. 3, 2014) (citing *Slack v. McDaniel*, 529 U.S. 473 (2000)).

The court concludes that a certificate of appealability should not issue in this case. Nothing suggests that the court's ruling in the denial of petitioner's claims is debatable or incorrect.

**IT IS THEREFORE ORDERED**, this 26th day of August, 2015, that petitioner's Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254 (Dkt. 1) is hereby denied and that a certificate of appealability is denied.

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE